**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:12-CR-248 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JAMES S. GWIN |
| vs. | : | |
| | : | |
| GREGORY EDWARDS, | : | **SENTENCING MEMORANDUM** |
| | : | **FOR GREGORY EDWARDS** |
| Defendant. | : | |

Defendant Gregory Edwards, through undersigned counsel, submits the instant Sentencing Memorandum for the Court's consideration and requests a sentence, as calculated and reviewed pursuant to Title 18, United States Code §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Counsel attaches the following Memorandum to assist the Court in fashioning Mr. Edwards's sentence.

                                                  Respectfully submitted,

                                                  STEPHEN C. NEWMAN
                                                  Federal Public Defender
                                                  Ohio Bar: 0051928

                                                  */s/ Jeffrey B. Lazarus*
                                                  JEFFREY B. LAZARUS
                                                  Assistant Federal Public Defender
                                                  Ohio Bar: 0079525
                                                  1660 W. 2nd Street, Suite 750
                                                  Cleveland, Ohio 44113
                                                  Telephone: (216) 522-4856
                                                  Facsimile: (216) 522-4321
                                                  jeffrey_lazarus@fd.org

                                                  Attorney for Gregory Edwards

## **MEMORANDUM**

### I. Introduction

Defendant Gregory Edwards now appears for sentencing. In line with the presentence report, his sentencing guideline range is 24 to 30 months, at total offense level 17, Criminal History Category I. This Memorandum details mitigation not included in the presentence report that supports a fair sentence under the factors codified at 18 U.S.C. § 3553(a). Gregory requests this Court impose a sentence of 12 months and a day of imprisonment, which would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

### II. The Charges and Gregory Edwards's Acceptance of Responsibility

On May 9, 2012, Gregory Edwards was indicted in a two-count indictment for false statements in a passport application and a false claim of United States citizenship. Dkt. 1. Mr. Edwards was not arrested in connection with these charges, and was totally unaware of their existence until December of 2018. At that time, he was arrested and later charged with illegally possessing a firearm in violation of 18 U.S.C. 922(g)(5). Dkt. 18, Superseding Indictment. On February 15, 2019, Mr. Edwards appeared before this Court for an arraignment, in which he pled guilty to the indictment. Dkt. 19. At his plea hearing, Mr. Edwards accepted responsibility for his offense by pleading guilty, and agreeing to the factual basis as outlined by the government. He also provided a detailed and genuine statement to the probation officer during his presentence interview accepting responsibility for his offense. Dkt. 21, Presentence Report, ¶ 15. In this letter, he accepted responsibility for his offense and apologized for his actions. Gregory will expand upon these in his upcoming allocution.

**III.    Applicable Legal Standards**

In *Kimbrough v. United States*, 552 U.S. 85 (2007), the United States Supreme Court reaffirmed the framework for Courts fashioning a defendant's sentence. Under *Kimbrough*, Courts must treat the Guidelines as the "starting point and the initial benchmark" when formulating a reasonable sentence. *Id.* However, the Guidelines are instead merely the starting point for a nuanced assessment of each individual case and the appropriateness of the Guidelines sentence must be judged against the other factors in 18 U.S.C. § 3553(a). *Id.* While the statute still requires a court to give respectful consideration to the Guidelines, the court must tailor the sentence in light of the other factors in § 3553(a) as well. *Booker v. United States*, 543 U.S. 220, 245-246 (2005).

The totality of these factors promotes a "holistic" sentence which may result in sentences lower than those previously calculated under a mandatory guideline scheme because the possible sentencing range no longer prohibits courts from considering any specific factor. Another crucial statutory sentencing authority is 18 U.S.C. § 3661, entitled "Use of information for sentencing." This provision also emphasizes a holistic sentencing approach, stating:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C § 3661. In applying the 18 U.S.C. § 3553(a) sentencing factors and these legal standards, there is ample support for the conclusion that Gregory Edwards warrants a sentence at the low-end of his sentencing guideline range, that being 12 months and a day in prison.

**IV.    Gregory Edwards's personal history and characteristics**

Gregory Edwards is a kind and caring 42-year-old man who was born in Kingston, Jamaica. He was one of seven children born to his parents. When Gregory was three years old,

his parents separated – some of the children went with their mother and the rest went with their father. Gregory went with his father and remained in his father's care until age six. At that time, his father dropped Gregory and his sisters with his great aunt, and never returned. Gregory was raised by his great aunt and did not see either his mother or father until he was an adult. Gregory and his sisters were raised by their great aunt in a very rough neighborhood of Kingston, an area replete with crime, gangs, and violence. Gregory remained in school until the seventh grade, but the family could not afford to send him to school past that age.

Even at the age of thirteen, Gregory began to work. While jobs were scarce in Kingston, he attained skills as a carpenter and landscaper, earning some income. Gregory continued to work all through his remaining childhood years. He became a full-time carpenter, but also did a variety of other construction jobs, including demolition, landscaping, plumping, and general handyman work.

At the age of 20, in 1997, Gregory and his girlfriend had a baby. Their daughter was born with several physical health issues and remained in the hospital for three weeks. Gregory lost his job because he was spending so much time at the hospital with his newborn daughter. Luckily, after a surgery, the issues were resolved, and Gregory was able to bring his daughter home. Weeks later, Gregory and his girlfriend split up, and the girlfriend chose to go to the United States, leaving Gregory alone with his infant daughter. Gregory relied on family for help in raising her, and shortly thereafter was able to get another job. Over the next few years, Gregory continued to work and help raise his daughter.

In 2002, Gregory was the victim of an assault and shooting that forever changed his life. He was living by himself, and luckily his daughter was at a relative's house that night. That evening a group of gang members broke into his home. These gang members were looking for

one of his neighbors, but when they couldn't find the neighbor, they began breaking into the other homes in the area. These gang members also set fire to several homes in the area. They broke down Gregory's down, robbed him, and shot him in the arm. They also left a lit stick of dynamite on his table, but thankfully it did not explode. Gregory pretended to be dead until they left. Gregory made it to a neighbor's house, who took him to the hospital.

Gregory made a report to the police but was never informed as to whether anyone was arrested. The bullet remained in his arm for seven months, in which he was physically unable to work as his arm movements were restricted and painful. He engaged in physical therapy and eventually gained full movement of his arm, allowing him to go back to work. While the physical traumas of the shooting subsided, the mental and emotional traumas did not. Gregory became afraid that the gang members who shot him would find out he was alive and come back for him. He lived in constant fear of assault. He was afraid his young daughter could be harmed as well. Gregory obsessed over these fears and finally decided that he needed to leave Jamaica to remove any possibility of the gang finding him. He chose to come to the United States in 2006. He came here lawfully as part of a cultural heritage festival in Connecticut. *See* PSR at ¶ 11. His daughter would come to the United States to join him a year later, but in the meantime left her with relatives in Jamaica.

When arriving in America, Gregory immediately found work in construction and carpentry. Once settled and financially independent, his daughter came to the United States to live with him. Gregory got her into school, and she split time between his home and her mother's home. Things were going well for a few years, but in 2009, Gregory's daughter began developing some behavior and emotional issues. Her mother decided their daughter was best off going back to Jamaica to be cared for by relatives, and sent her back. Gregory was upset by this,

5

but agreed it was the best choice. Gregory knew that in order to visit his daughter, he would need a valid passport to travel between Jamaica and the United States. Even though he had no criminal record and had entered the United States lawfully, he feared deportation. So, in 2010, he purchased a fake driver's license from someone and used the license to falsely apply for a United States passport. This is the offense for which he has pled guilty. He was never granted the passport, and never traveled to Jamaica. He was indicted two years after his false application, but never received notice of the charges and did not know he was under indictment until December of 2018.

In 2007, he was arrested in Cleveland for having a bag of marijuana, containing about 200 grams, less than half a pound. He was charged with drug trafficking, a felony of the fourth degree, in the Cuyahoga County Court of Common Pleas. PSR at ¶ 39. He was appointed an attorney named John Lemieux. Gregory did not deny his possession of the marijuana, but maintained it was simply just a large amount for personal use. He explained to his attorney that being from Jamaica, marijuana use was as common as drinking alcohol, and having such a large amount for personal use was typical. He wanted to go to trial to challenge the trafficking charge, or plead guilty to possession. His attorney strong-armed into pleading guilty, and failed to negotiate any plea deal. It should be noted that Attorney Lemieux was suspended by the Ohio Supreme Court in 2011, and later given an indefinite suspension in 2014, and remains suspended to this date.[1] In fact, Attorney Lemieux had substance abuse issues of his own.[2] Because Attorney Lemieux failed to negotiate any plea deal for his client – either to a felony of the fifth

---

[1] *https://www.supremecourt.ohio.gov/attorneysearch/#/73494/attyinfo*

[2] *https://www.cleveland.com/open/2014/05/ohio_supreme_court_orders_susp.html*

degree or a possession offense – Gregory's instant offense is increased from a base offense level 14 to 20. *See* PSR at ¶ 24; U.S.S.G. § 2K2.1.

Despite this state offense, Gregory continued to work in order to provide for himself and his family. He got married in 2008 and he and his wife had a son shortly thereafter. They separated in 2011, but Gregory continued to be a good father to his son and provide for him financially. In 2014, Gregory came to learn that his daughter in Jamaica was having serious mental and emotional problems. She was very depressed and the seventeen-year-old had tried to kill herself. Gregory insisted that she return to the United States to be with her parents. She came to live with Gregory; he got her into counseling and tried to help her with her issues. Gregory devoted all his time to helping her, and felt he was making progress, but on February 15, 2015, Gregory found his daughter's body after she hung herself.

Gregory was devastated. He did not get any professional help, but began drinking heavily. He really became lost, and went into great depression. He continued to work as a handyman and in a variety of carpentry jobs. Over time he made friends, began to build relationships, making beneficial employment contacts, but was continuously depressed and upset about the loss of his daughter. In December of 2018, he borrowed the car of his good friend Tyneshia Brown, and was driving in the Euclid area. Gregory knew Tyneshia kept a gun in her car, but used her car nonetheless to drive to and from work. He was pulled over for a traffic stop and officers found the gun, leading to his arrest and the instant charges. He has remained in custody since December 15, 2018.

In fashioning his sentence, Gregory asks this Court to consider his personal history and circumstances. Gregory suffered two major traumas – being shot and the suicide of his daughter – both of which had a profound effect on him.

## V. Letters of Support

Gregory attaches fourteen letters of support for this Court's consideration, which are attached as Exhibit A1 through A14. The first letter is written by Gregory's son, Gianni. He wants this Court to know how much he misses his father and that his father has been an extremely positive influence for him by instilling a strong work ethic on him. Gianni also includes two pictures of him and his father. Ex. A1. Gianni's mother, Kashmir Matthews has also written a letter for this Court's consideration. She explains that Gregory is both a wonderful father and dedicated worker. Ex. A2. Honie Matthews, Kashmir's mother and Gregory mother-in-law, has also written a similar letter detailing how involved of a father Gregory has been. She details that he was a good provider and reliable worker. Ex. A3.

Gregory also has a three-year-old daughter; her older sister, Moriah, considers Gregory to be her step-dad and has written a letter of support. She states that Gregory is a good father to his daughter and a good step-father to her. Ex. A4. Tyneshia Brown, the mother of Gregory's daughter and Moriah, writes a similar letter. She also writes to this Court to express Gregory to be a positive father and a diligent worker who provides for the family. Ex. A5.

Several friends of Gregory have also written letters for this Court. They are attached as Exhibit A6 (written by Tisha Chisholm), A7 (written by Samantha), A8 (written by Erika Jegede), A9 (written by Lana), and A10 (written by Debra Matthews). These letters all detail the same themes about Gregory's positive skills as both a father a worker.

Additional letters are attached that detail specifics regarding Gregory's employment. Exhibit A11 is written by Shaine Mendoza, the owner of Mendoza Construction, who has employed Gregory since 2015. He details Gregory has been a reliable, professional, and dynamic worker over these years. Pastor Theresa Hatcher authors a letter that Gregory was a member of

her church, but also provided his handyman services to repair her rental properties. Ex. A12. Rhonda Henry's letter, Ex. A13, details the long hours Gregory devoted to his craft and his dedication. Jacqueline Crawford, the leasing manager for an apartment complex, recalls the great work that Gregory did in remodeling the apartments. Ex. A14.

Gregory asks this Court to consider these letters in fashioning his sentence. In consideration of these letters, Gregory asks this Court to grant a variance below his sentencing guideline range. His positive work history and skills as a father are both mitigating factors this Court can consider under the § 3553(a) factors.

### VI. Conclusion

Considering all the mitigation set forth in this memorandum, together with Gregory's allocution at his sentencing hearing, he requests this Court impose a sentence of 12 months and a day of imprisonment, which is sufficient but not greater than necessary to achieve the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

                    Respectfully submitted,

                    STEPHEN C. NEWMAN
                    Federal Public Defender
                    Ohio Bar: 0051928

                    */s/ Jeffrey B. Lazarus*
                    JEFFREY B. LAZARUS
                    Assistant Federal Public Defender
                    1660 W. 2nd Street
                    Skylight Office Tower, Suite 750
                    Cleveland, Ohio 44113
                    Telephone: (216) 522-4856; Fax: (216) 522-4321
                    E-Mail: jeffrey_lazarus@fd.org

                    Attorney for Gregory Edwards

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2019, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

>*/s/ Jeffrey B. Lazarus*
>JEFFREY B. LAZARUS
>Assistant Federal Public Defender